THIS OPINION IS A
PRECEDENT OF THE T.T.A.B.

Mailed:
May 5, 2011

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Amanda Blackhorse, Marcus Briggs, Phillip Gover,
Jillian Pappan, and Courtney Tsotigh
v.
Pro Football, Inc.

_____

Cancellation No. 92046185

_____

Jesse A. Witten of Drinker, Biddle & Reath LLP for
Blackhorse, Briggs, *et. al.*

Robert L. Raskopf and Claudia Bogdanos of Quinn Emanuel
Urquhart & Sullivan, LLP for Pro-Football, Inc.

_____

Before Kuhlke, Cataldo and Bergsman,
Administrative Trademark Judges.

Order by Bergsman, Administrative Trademark Judge.

This proceeding mirrors prior litigation before the Board of a disparagement claim under Section 2(a) of the Trademark Act of 1946, 15 U.S.C. §1052(a), *Harjo v. Pro-Football, Inc.*, 50 USPQ2d 1705 (TTAB 1999), but brought by different plaintiffs. The pleadings in *Harjo* and in this cancellation proceeding are identical but for two additional affirmative defenses based on violations of respondent's constitutional right to "due process."

In an order dated March 15, 2011, the Board exercised its authority under Trademark Rule 2.120(i)(2) and ordered the parties to attend a pretrial conference in person at the office of the Board in Alexandria, Virginia.[1]  The conference was held on Wednesday, April 13, 2011.  In attendance for the Board were Administrative Trademark Judges Karen Kuhlke, Peter Cataldo and Marc Bergsman, as well as Interlocutory Attorney Richard Kim.  Representing petitioners were Jesse A. Witten, John D. V. Ferman Lee Roach and Stephen J. Wallace.  Representing respondent were Robert L. Raskopf and Claudia T. Bogdanos.

At the beginning of the conference, the Board informed the parties that it will be taking a more active role in pretrial management of cases that the Board identifies as having the potential to become overly contentious and/or involve creation by the parties of excessive records.  This cancellation proceeding has been identified as such a case, in light of prior Board proceedings, and subsequent appellate proceedings, regarding the involved registrations. This order recounts the issues that were discussed with the parties.[2]

---

[1]  Trademark Rule 2.120(i)(2) provides that "the Board may, upon its own initiative … request that the parties or their attorneys, under circumstances which will not result in undue hardship for any party, meet with the Board at its offices for a … pretrial conference."

[2] In any pretrial conference under Trademark Rule 2.120(i)(2), the issues to be discussed will depend on the nature of the

A.    **Consequences Of Rearguing Issues That Have Been Decided**.

The Board's decision in *Harjo* noted the following:

> As the record reveals, the parties have been extremely contentious, and the evidence and objections thereto are voluminous. Further, in their zeal to pursue their positions before the Board, it appears that the parties have continued to argue, through the briefing period and at the oral hearing, certain issues that have already been decided by the Board in this case.

*Harjo v. Pro-Football, Inc*., 50 USPQ2d at 1709.

In the subsequent district court proceeding, Judge Kollar-Kotelly made the following observation after the parties responded to her request to submit page citations to the depositions that the parties considered to be probative of their respective positions:

> Both parties complied with this request. However, as the old saw goes, in giving an inch, the parties took a mile. Both sides filed supplemental evidence, unrequested by the Court, that the Court finds unhelpful in resolving the legal challenge.

*Pro-Football Inc. v. Harjo,* 284 F.Supp.2d 96, 68 USPQ2d 1225, 1229 (D.D.C. 2003).[3]

---

claims and defenses, and the substantive and procedural particularities of the case at hand. Similarly, any order the Board issues following such a conference will necessarily be tailored to the particular circumstances of the case and any instructions to the parties regarding the conduct of trial will be apply to that case alone, just as the instructions provided herein apply to this case alone.

[3] Petitioner's counsel advised the Board during the conference that they did not represent petitioners until after the above-

The parties have assured the Board that they are cooperating, pointing to the "Joint Stipulation Regarding Admissibility of Certain Evidence and Regarding Certain Discovery Issues" filed March 14, 2011. The Board appreciates and encourages this professionalism and spirit of collegiality.

Nevertheless, once the Board issues an order that constitutes law of the case and/or preserves an issue for appeal, any further re-argument of the issue in a subsequent motion or brief will not be considered. Moreover, the Board may exercise its discretion and disregard the entire motion or brief in which the re-argument is included. In this regard, any motion or brief including a re-argument of a previously decided issue in this proceeding will be deemed to be a nonconforming brief and will be given no consideration.

B.   **Summary Judgment**.

We view this case as particularly unsuited for disposition by any motion for summary judgment, precisely because the parties dispute a great many matters of fact, as well as what conclusions are to be drawn from relevant evidence. Accordingly, the Board will not entertain any motions for summary judgment, unless the parties, by written

---

noted cases were decided.  While we appreciate the distinction, the shadow of the prior proceedings remains.

4

stipulation agree that (1) there are no genuine disputes as to any material facts and (2) notwithstanding such stipulation, if the Board should note the existence of genuine disputes about material facts, then the Board would be free to resolve such issues. Such written stipulation would have to be approved by the Board prior to the filing of any motions for summary judgment.

C. **Notices of Reliance**.

As noted above, the parties have stipulated to the admissibility of certain evidence; with specified exceptions, all of the evidence in *Harjo* submitted by a notice of reliance, including transcripts of depositions and exhibits, shall be admissible in this proceeding by notice of reliance. At the pretrial conference, the parties also stipulated that any documents could be submitted through a notice of reliance without the other party waiving the right to make substantive objections.

D. **Protective Order**.

The Board noted that because the parties have not filed a protective order, the Board's standard protective order is applicable. Additionally, the Board stated that if the parties wished to modify the Board's standard protective order, they could do so by filing a stipulation for Board approval.

5

E.   **Confidential Information**.

In our discussion regarding whether either party anticipated introducing any confidential or commercially sensitive information, respondent indicated that it anticipated doing so but only minimally and that it was working on a possible stipulation with petitioners.  In this regard, the Board advised respondent to be circumspect and to limit the "confidential" designation only to information that is truly confidential or commercially sensitive.  The Board has observed far too many cases in which the parties have improperly designated testimony and evidence as confidential that is not objectively confidential. *See, for example, Edwards Lifesciencs Corp. v. VigiLanz Corp.,* 94 USPQ2d 1399, 1402 (TTAB 2010).  Finally, if respondent designates more than a minimal amount of evidence as confidential or commercially sensitive and the designated information is more than 20 years old, respondent should anticipate an order to show cause why such information should warrant a designation as confidential and be shielded from public view.

F.   **Table of Evidence**.

In anticipation of a voluminous record, we require the parties to prepare and file tables summarizing their testimony and other evidence and specifying (1) the

probative value of particular facts or testimony and (2) the location in the record of such facts or testimony.

With respect to identifying the location of the evidence (*e.g.,* depositions, exhibits thereto, and notices of reliance), the parties will identify the source (*e.g.,* petitioner's first notice of reliance) and the particular entry in TTABVue, the Board's electronic case file system, where the evidentiary items or testimony appear. The parties have suggested adding Bates Numbers to the tables, and the Board has agreed to this addition.

The parties will attach the tables to their briefs on the case. The tables are not included within the page limits of the briefs. The proposed tables are illustrated below.

1. Petitioners' evidentiary table

| Source | Probative Value | TTABVue Entry and Page | Bates No. |
|---|---|---|---|
| | | | |
| Chase Dep., p. 23 | Meaning of the word Redskins | 57 page 25 | 303030 |
| | | | |
| First Notice of Reliance – response to interrogatory No. 1 | How Native Americans perceive the word Redskins | 43 page 7 | 202020 |

2. Respondent's evidentiary table

| Source | Probative Value | TTABVue Entry and Page | Bates No. |
|---|---|---|---|
| | | | |
| Fellows Dep., p. 14 | Meaning of the word Redskins | 67 page 50 | 010203 |

| Third Notice of Reliance – News articles | How Native Americans perceive the word Redskins | 70 page 32 | 040506 |
|---|---|---|---|

3.  Petitioners' rebuttal evidentiary table

| Source | Probative Value | TTABVue Entry and Page | Bates No. |
|---|---|---|---|
| Barnhart Dep., pp. 34-54 | Rebuttal to respondent's expert testimony regarding the meaning of the word Redskins | 87 page 45 | 999877 |

G.    **Briefs On The Case:  Maintaining Objections**.

The Board reminded the parties that evidentiary objections properly raised by the parties may be maintained in an appendix or by way of a separate statement of objections attached to their briefs on the case.  The appendix or separate statement is not included within the page limit of their briefs.  TBMP §801.03 (2nd ed. rev. 2004).  When the parties argue their objections in the appendix to the brief or supplemental statement, the parties are advised to keep in mind that a cancellation proceeding is analogous to a bench trial and that the Board is capable of weighing the relevance and strength or weakness of the testimony and evidence, including any inherent limitations (*e.g.,* the information in a newspaper article submitted through a notice of reliance is hearsay and is proof only that the information was printed and may have been seen by

the public, or represents the opinion of the author, rather than for the truth of what was printed).

The parties are discouraged from maintaining objections to evidence that are not outcome-determinative or that do not have a significant effect on either their own position or the position of their adversary. All too often, the Board finds parties stating objections at trial to "cover the bases" and then maintaining more than are necessary in their briefing of the case.

H.    **Disparagement vs. "Contempt or Disrepute."**

Under Section 2(a) of the Trademark Act:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it–
>
> (a) Consists of or comprises immoral, deceptive, or scandalous matter; or matter which may disparage … persons, living or dead, institutions, beliefs, or national symbols, or bring them into contempt, or disrepute….

In *Harjo,* the Board held that the guidelines for determining whether a mark is disparaging are equally applicable to determining whether such matter brings persons or institutions into contempt or disrepute. *Harjo v. Pro-Football, Inc*., 50 USPQ2d at 1740.

The D.C. District Court held that the Board conflated disparagement and "contempt or disrepute."

9

> The TTAB also conflated the "contempt or disrepute" inquiry with the "disparage" inquiry. *Id*. at 1740. In other words, the TTAB concluded that "the guidelines enunciated [in its opinion], in connection with determining whether matter in a mark may be disparaging are equally applicable to determining whether such matter brings 'persons, living or dead, institutions, beliefs, or national symbols into contempt or disrepute.'" *Id*. (quoting 15 U.S.C. §1052(a)). None of the parties argue that the TTAB's decision to treat "disparage" in the same manner as "contempt or disrepute" was error. Therefore, the Court has not reviewed this legal determination and in assessing the TTAB's decision, only reviews whether the marks at issue "may disparage" Native Americans, which includes whether the marks bring Native Americans into contempt or disrepute.

*Pro-Football Inc. v. Harjo*, 284 F.Supp.2d 96, 68 USPQ2d 1225, 1239 (D.D.C. 2003).

For purposes of completeness, the conference included discussion of whether, for this proceeding, there was any disagreement by the parties that the guidelines for determining whether a mark is disparaging are equally applicable to determining whether such matter brings persons or institutions into contempt or disrepute. Respondent agreed but petitioners requested time to consider the issue.

In the event that petitioners do not agree, then petitioners are required to distinguish the disparagement claim from a claim that the mark may bring persons or institutions into contempt or disrepute and identify the

10

elements necessary for proving that a mark brings persons or institutions into contempt or disrepute.

Petitioners are allowed until April 20, 2011 to file notice of their position on the issue with the Board and, if necessary, to explain the differences between the elements of these claims, failing which the Board, as it did in *Harjo,* will use the same guidelines for determining whether a mark is disparaging and whether it brings persons or institutions into contempt or disrepute.

I.  **Applicable Law**.

In the March 15, 2011 Order, the Board summarized the applicable law regarding disparagement and laches as discussed in the Board's *Harjo* decision and by the District of Columbia District Court and District of Columbia Circuit Court of Appeals and asked the parties to comment. The parties submitted their comments to the Board prior to the pretrial conference. At the conference, the parties requested, and the Board approved, time for each party to respond to the comments submitted by the other party. The purpose of this exercise is to reach an agreement regarding the applicable law prior to trial in order to allow the parties to focus their attention on the introduction of evidence that is truly relevant to the applicable law.

The parties are allowed until April 25, 2011 to submit their respective responses to the comments regarding the applicable law concerning disparagement and laches.

J. **Affirmative Defenses**.

During the conference, the Board reviewed respondent's affirmative defenses. An affirmative defense assumes the allegations in the complaint to be true but, nevertheless, constitutes a defense to the allegations in the complaint. An affirmative defense does not negate the elements of the cause of action; it is an explanation that bars the claim. *Gwin v. Curry,* 161 F.R.D. 70, 71 (N.D. Ill. 1995) (the affirmative defense concept codifies the common law plea in confession and avoidance: "Each defendant either expressly or impliedly treats the factual allegations in a complaint as true, but then goes on to assert new matter that eliminates or limites the defendant's ordinary liability stemming from those allegations"), *citing* Black's Law Dictionary, p. 297 (6th ed. 1990). In this case, the affirmative defenses would apply if the term REDSKINS is found to be disparaging to Native Americans (or to expose them to contempt or disrepute) when used in connection with football exhibitions, but the facts comprising the affirmative defense excuse respondent from liability. With this background, we discuss each of respondent's affirmative defenses.

1. **First Affirmative Defense – The petition for cancellation fails to state a claim upon which relief can be granted**. Failure to state a claim upon which relief can be granted is not an affirmative defense. In any event, we hold that the petition states a claim upon which relief can be granted. In view thereof, the first affirmative defense is stricken. *See Harjo v. Pro Football Inc.,* 30 USPQ2d 1828, 1830 (TTAB 1994)

2. **Second Affirmative Defense - Petitioners lack standing**. Lack of standing is not an affirmative defense. Standing is an element of petitioners' claim. Petitioners must prove standing as part of their case. In view of the foregoing, the second affirmative defense is stricken. *See Harjo v. Pro Football Inc.,* 30 USPQ2d at 1830.

3. **Third Affirmative Defense – Equitable Estoppel**.

Respondent alleges that because the REDSKINS marks have been registered for many years and because petitioners have known about the registrations, petitioners' claim is barred by the doctrine of equitable estoppel. Equitable estoppel is the doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had. In other words, the defendant justifiably relied on the plaintiff's action or inaction. *Estoppel by laches* precludes a party from bringing an action when the party

13

knowingly failed to claim or enforce a legal right at the proper time.  Because the equitable estoppel affirmative defense overlaps with the laches defense, and for purposes of clarity, we are striking the equitable estoppel affirmative defense.

    4.    **Fourth Affirmative Defense – Laches**

We are taking the comments of the parties under advisement.

    5.    **Fifth Affirmative Defense – Secondary meaning**.

Essentially, the basis for this affirmative defense is that through the long use, advertising and promotion of the registered REDSKINS marks, those marks have acquired secondary meaning identifying respondent and that the favorable goodwill embodied in the names and symbols of the Washington Redskins football franchise cannot be interpreted as being disparaging to Native Americans (or exposing them to contempt or disrepute).  We interpret this affirmative defense as an elaboration of respondent's denial of petitioner's allegation that the term REDSKINS is disparaging:  that is, it is an explanation of why the term REDSKINS was not disparaging at the time the registrations issued.  In other words, we read respondent's position as a contention that the word REDSKINS, when used in connection with football, was perceived, even by Native Americans, as a reference to respondent at the time the marks were

14

registered. Respondent may submit evidence and argument regarding this defense.

6.    **Sixth Affirmative Defense – Petitioners will not be damaged**; and

7.    **Seventh Affirmative Defense – Petitioners have not alleged any special damages**.

The term "damage" as used in Sections 13 and 14 of the Trademark Act concerns only a party's standing to file an opposition or petition to cancel, respectively. Furthermore, a party may establish its standing to oppose or to petition to cancel by showing that it has a real interest in the case, that is, a personal interest beyond that of the general public. There is no requirement that actual damage be pleaded and proved in order to establish standing or to prevail in an opposition or cancellation proceeding. *See Books on Tape Inc. v. Booktape Corp.*, 836 F.2d 519, 5 USPQ2d 1301 (Fed. Cir. 1987); *Jewelers Vigilance Committee Inc. v. Ullenberg Corp.,* 823 F.2d 490, 2 USPQ2d 2021 (Fed. Cir. 1987); *and International Order of Job's Daughters v. Lindeburg & Co.,* 727 Fd.2d 1087, 220 USPQ 1017 (Fed. Cir. 1984). In view thereof, the sixth and seventh affirmative defenses are stricken.

8.    **Eighth Affirmative Defense – Section 2(a) of the Trademark Act violates the right of freedom of speech guaranteed by the First Amendment;**

15

9. **Ninth Affirmative Defense – Section 2(a) of the Trademark Act is barred because it is constitutionally overbroad;**

10. **Tenth Affirmative Defense – Section 2(a) of the Trademark Act is barred because it is unconstitutionally void for vagueness;**

11. **Eleventh Affirmative Defense –Petitioners' claim "deprives Registrant of its constitutional right of due process" because respondent's mark was first registered in 1967; and**

12. **Twelfth Affirmative Defense – Petitioners' claim "deprives Registrant of a federally granted property right Registrant has relied on for almost four decades in violation of its due process rights."**

Each of these defenses requires the Board to rule on the constitutionality of the Trademark Act on its face or as applied. Simply put the Board does not have the authority to determine constitutional claims. *See* TBMP § 102.01 (2nd ed. rev. 2004); *see generally In re Mavety Media Group Ltd.*, 33 F.3d 1367, 1374, 31 USPQ2d 1923 (Fed. Cir. 1994); *In re International Flavors & Fragrances Inc.*, 183 F.3d 1361, 1368, 51 USPQ2d 1513 (Fed. Cir. 1999). In view thereof, the eighth, ninth, tenth, eleventh, and twelfth affirmative defenses are stricken.

In *Harjo,* respondent asserted that it was not requesting the Board to declare Section 2(a) unconstitutional, but it was arguing the Board must apply Section 2(a) in a constitutional manner, and that under the facts and circumstances of the case, cancellation of its registrations under Section 2(a) would be an unconstitutional application of the statute. In regard to applying the Trademark Act in a constitutional manner, the duty of the USPTO under the Trademark Act in reviewing applications for registration is nothing more and nothing less than to register those marks that identify and distinguish goods and services in the marketplace, as long as those marks do not run afoul of any statutory provision that would prohibit registration. Moreover, the registration scheme of the Trademark Act is one that is more inclined to inclusion than exclusion so as to give as comprehensive a notice as possible to those engaged in commerce, of the trademarks and service marks in which others have claimed rights. *In re Old Glory Condom Corp.,* 26 USPQ2d 1216, 1220 n.3 (TTAB 1993).

In summary, we are striking the first, second, third, sixth, seventh, eighth, ninth, tenth, eleventh and twelfth affirmative defenses. As indicated previously in this order, respondent is precluded from introducing evidence exclusively associated with those affirmative defenses and

17

from rearguing those issues in any subsequent briefs.  For purposes of clarity, our decision is intended to preserve respondent's option to argue for application of the relevant defenses on appeal.

Petitioners are allowed until April 20, 2011 to inform the Board of their position regarding the "contempt or disrepute" issue.

The parties are allowed until April 25, 2011 to submit their responses to the comments regarding the applicable law regarding disparagement and laches.

Trial dates, including the time for discovery, remain as set in the stipulation filed on March 30, 2011.