This Opinion Is a
Precedent of the TTAB

Hearing:  July 26, 2022                     Mailed: November 30, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*Mystery Ranch, Ltd.*

*v.*

*Terminal Moraine Inc.*

————

Opposition No. 91250565

————

William B. Kircher, of Erickson Kernell IP LLC, for Mystery Ranch, Ltd.

Scott W. Johnston, of Merchant & Gould P.C., for Terminal Moraine Inc.

————

Before Wolfson, Lynch, and Lebow, Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

Terminal Moraine Inc. ("Applicant") seeks registration on the Principal Register

of the mark depicted below ("DESIGN" disclaimed):[1]

---

[1] Application Serial No. 88070495 was filed on August 8, 2018 on the basis of Applicant's allegation of a bona fide intent to use the mark in commerce under Trademark Act Section 1(b), 15 U.S.C. § 1051(b). The application record includes the following description of the mark: "The mark consists of the words 'DANA DESIGN' in black with a character in red wearing a backpack above the letter 'N'." The colors red and black are claimed as features of the mark.



for the following goods and services:

> Backpacks and shoulder bags for use in camping, and hiking, sold exclusively at sporting goods, outdoor, and mountaineering stores and websites or through the sporting goods departments of general retailers in International Class 18; and

> Tent flies, Tents; Tents for mountaineering or camping; Tents made of textile materials; Bivouac sacks; Rain flies for tents, all of the aforesaid goods being sold exclusively at sporting goods, outdoor, and mountaineering stores and web sites or through the sporting goods departments of general purpose retailers in International Class 22.

Mystery Ranch, Ltd. ("Opposer" or "Mystery Ranch") opposes registration of the mark based on an alleged false suggestion of a connection with Opposer and Dana Gleason, Opposer's co-owner, under Section 2(a) of the Trademark Act, 15 U.S.C. § 1052(a). (Amended Notice of Opposition, 15 TTABVUE 4, 8).[2] Opposer also opposes registration under Trademark Act Section 2(c), 15 U.S.C. § 1052(c), based on an allegation that "DANA" identifies Dana Gleason, whose written consent to registration of Applicant's mark has not been granted. *Id.* at 8.

---

[2] Citations to the opposition proceeding record refer to TTABVUE, the Board's online docketing system. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable. Citations to the prosecution history of the application are to pages from the Trademark Status & Document Retrieval ("TSDR") database of the United States Patent and Trademark Office ("USPTO").

In its Answer, Applicant denies the salient allegations in the Notice of Opposition, and asserts the affirmative defenses of estoppel and laches.[3] (17 TTABVUE 7-8). Applicant's estoppel defense is based on Opposer's alleged abandonment of its mark. This affirmative defense was pursued at trial. Applicant's laches defense is based on Opposer's asserted inaction prior to the date of publication of Applicant's mark. This factual basis is unavailable because Opposer could not file its Notice of Opposition until publication of Applicant's mark and the opposition was timely filed. "Logically, laches begins to run from the time action could be taken against the acquisition by another of a set of rights to which objection is later made. In an opposition or cancellation proceeding the objection is to the rights which flow from registration of the mark." *Nat'l Cable Television Ass'n Inc. v. Am. Cinema Editors Inc.*, 937 F.2d 1572, 19 USPQ2d 1424, 1432 (Fed. Cir. 1991). Accordingly, we deny the laches affirmative defense.

## I. Evidentiary Objection

Opposer lodged an evidentiary objection to Applicant's Exhibit M (Applicant's Notice of Reliance, 30 TTABVUE 124-334), which contains copies of 48 third-party registrations "for DANA and DESIGN and/or DANA marks" (Applicant's Brief, 36 TTABVUE 28). Opposer's objection is based on Applicant's alleged failure to disclose

---

[3] Applicant also asserted that Opposer's claim under Section 2(c) should be denied for reasons that we construe as mere amplifications of its denial of the claim, namely that Dana Gleason is insufficiently well-known and that Opposer lacks a proprietary interest in the DANA DESIGN trademark.

the registrations when requested by Opposer during discovery (33 TTABVUE 53-56).

Opposer's requests and Applicant's responses include the following:

> • **Interrogatory No. 2**: Identify any searches that were conducted for third party uses or registrations of trademarks similar to the DANA DESIGN Mark.
>
> **Response**: Applicant objects to Interrogatory No. 2 to the extent it calls for information protected by the attorney-client privilege and/or work product immunity. Subject to the forgoing, Applicant responds as follows: Around November 2016, Todd Fairbairn performed a brief search on the internet on DANA DESIGN.
>
> • **Request for Production No. 3**: All documents which refer or relate to any investigation, inquiry, study, evaluation or analysis of the availability of the DANA DESIGN Mark for use or registration as a trademark.
>
> **Response**: Applicant objects to Request No. 3 to the extent it calls for information protected by the attorney-client privilege and/or work product immunity. Applicant will produce relevant, responsive documents. Applicant is withholding documents on the basis of the attorney-client privilege and/or the attorney work product immunity.
>
> • **Request for Production No. 10**: All documents which refer or relate to any investigation, inquiry, study, evaluation or analysis of any likelihood of confusion with respect to the DANA DESIGN Mark and any other trademarks.
>
> **Response**: Applicant objects to Request No. 10 to the extent it calls for information protected by the attorney-client privilege and/or work product immunity. Applicant will produce relevant, responsive documents. Applicant is withholding documents on the basis of the attorney-client privilege and/or the attorney work product immunity.

(32 TTABVUE 25, 27, 29-30). Opposer observes that "[s]ome of the responses included

objections and others included varying levels of responsiveness," but "none of the

responses made any reference to the third-party registrations attached as Exhibit M to Applicant's Notice of Reliance." (33 TTABVUE 54).

Applicant admits not disclosing the third-party registrations in Exhibit M during discovery, but argues that Opposer's objection should be overruled for two reasons. First, Applicant argues that "[t]rademark registrations owned by non-parties to the proceeding may be introduced by a Notice of Reliance as 'official records.' Therefore, it is well-settled that the evidence of third party registrations contained in Exhibit M is admissible and should not be stricken from the record." (36 TTABVUE 27, citations omitted). This argument is a non sequitur because Opposer did not challenge the admissibility of the third-party registrations in Exhibit M based on their method of introduction.

Second, Applicant argues that it "had no actual knowledge of any relevant third party registrations because no formal investigation had yet been undertaken, and Applicant was under no duty to perform such an investigation simply because Opposer's discovery requested such pre-existing information." (*Id*. at 28). Applicant explains that while "prior to applying to register Applicant's mark, Applicant's principal, Todd Fairbairn, sought to identify additional records on the Federal Register including the terms DANA and DESIGN or DANA alone, which revealed the existence of a wide range of such records . . . it was not until trial preparation that Applicant sought to conduct a full search and formally identify those records that Mr. Fairbairn reviewed in passing when assessing whether or not to file for protection of Applicant's Mark." *Ibid.*

Applicant's contention that it had "no actual knowledge" of the third-party registrations in Exhibit M until it prepared for trial and "sought to conduct a full search and formally identify those records" differs from Fairbairn's testimony, wherein he declares that as his "plans for offering for sale the DANA DESIGN Goods under the DANA DESIGN mark became more concrete," (31 TTABVUE 3), he "ran a trademark search online and on the United States Trademark Office website," which identified not only two cancelled registrations formerly owned by Dana Gleason's previous company, Dana Designs, Ltd., but also "other DANA marks" including "many" of the same 48 marks provided with Exhibit M (*Id.* at 4). After listing those registrations by mark, registration number, goods/services, status, and ownership information in his declaration, he explains that:

> [b]ased on the foregoing search results, I concluded that any rights to the DANA DESIGN mark had been abandoned more than a decade before I applied for it and that given the wide range of DANA-formative registrations existing in the marketplace and on the Federal Register the applied-for DANA DESIGN mark was available for use and registration in the United States.

*Id.* at 20.

Under the estoppel sanction, Fed. R. Civ. P. 37(c)(1), made applicable to Board proceedings under Trademark Rule 2.116, 37 C.F.R. § 2.116:

> If a party fails to provide information or identify a witness as required by [Federal] Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

*See, e.g.*, *Flame & Wax, Inc. v. Laguna Candles, LLC*, 2022 USPQ2d 714, at *14 n.27 (TTAB 2022) (party that fails to provide information during discovery may, upon

motion or objection by its adversary, be precluded from using that information or witness at trial). However, a party need not investigate third-party use or registrations to respond to discovery requests. *See Sheetz of Delaware, Inc. v. Doctor's Associates Inc.*, 108 USPQ2d 1341, 1348 (TTAB 2013); *Rocket Trademarks Pty. Ltd. v. Phard S.p.A.*, 98 USPQ2d 1066, 1071-72 (TTAB 2011) (a party has no duty to conduct an investigation of third-party uses in response to discovery requests).

Here, the record is inconclusive as to whether documentary evidence of the third-party registrations in Exhibit M was in Applicant's possession at the time of the relevant discovery requests. Thus, we cannot conclude that any such documents were improperly withheld. Accordingly, Opposer's objection is overruled and we consider Exhibit M for whatever probative value it may have, which is minimal in any event because most of the third-party registrations cover vastly disparate goods or services, none of which include backpacks, hiking equipment, or tents. For the very few registrations that cover arguably related goods, such as clothing or duffel bags, we lack evidence that they are in the relevant industry, and we lack proof of marketplace use. Thus, they do not impact our decision under Sections 2(a) or 2(c) of the Trademark Act.

## II. The Record

The pleadings, and pursuant to Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the file of the opposed application, are automatically of record.

Opposer submitted the following testimony declarations (29 TTABVUE):

- Dana Gleason, its co-owner;

- Rob Curtis, principal of Trixar Media & Consulting;

- Eric Graves, editor-in-chief of "The Soldier Systems Daily" online publication; and

- Rick Saez, host of "The Outdoor Biz Podcast."

Opposer also submitted the following evidence under Notices of Reliance (28 TTABVUE and 32 TTABVUE):

- Copies of its now canceled trademark registrations;

- Copies of various third-party Internet websites purporting to show Opposer's and Dana Gleason's "unmistakable and public connection to the DANA DESIGN mark," (28 TTABVUE 3);

- Applicant's responses and supplemental responses to Opposer's discovery requests;[4] and

- An email produced by Applicant in connection with its responses to Interrogatory Nos. 3 and 5, (28 TTABVUE 59).

Applicant submitted the declaration of its principal, Todd Fairbairn, (31 TTABVUE), accompanied by assignment documents relating to Opposer's canceled registrations.

Applicant also submitted, under Notice of Reliance (30 TTABVUE):

---

[4] Opposer also submitted its supplemental responses to Applicant's interrogatories, which have not been considered. *See* Trademark Rule 2.120(k)(5), 37 C.F.R. § 2.120(k)(5) (Answers to interrogatories "may be submitted and made part of the record only by the receiving or inquiring party" except where a party offers its own answers to interrogatories so as to, in fairness, "make not misleading what was offered by the receiving or inquiring party," and supports the submission by a written statement explaining why the party needs to rely upon its own answers to interrogatories. Opposer does not contend that Applicant offered misleading answers so as to enable Opposer to rely upon its own answers).

- Opposer's responses to Applicant's discovery requests;

- Official documents regarding Opposer's corporate status as well as that of Dana Design, Ltd.;

- Copies of Opposer's canceled registrations and third-party registrations;

- An official record from the Social Security Administration regarding the name "Dana;" and

- Wikipedia and dictionary entries for "Dana" and "design."

## III. Factual Background

### A. Dana Gleason and Mystery Ranch, Ltd.

In 1985, Dana Gleason founded Dana Design, Ltd., "a backpack company that," according to Mr. Gleason, "would come to be recognized as the industry standard in load carriage technology." (Gleason Decl., ¶ 2, 29 TTABVUE 4). "The Dana Design company sold high quality backpacks and camping gear," *id.* at ¶ 4, generating approximately $58,000,000 in gross revenue, and spending approximately $2,460,000 in advertising the DANA DESIGN brand. *Id.* at ¶ 8.

In 1992, Dana Design Ltd. registered the typeset mark DANA DESIGN[5] for "sporting goods sold exclusively in sporting goods, outdoor and mountaineering shops; namely, backpacks, frames for backpacks, fanny packs and hip sacks."[6] (Opposer's

---

[5] Prior to November 2, 2003, "standard character" drawings were known as "typed" or "typeset" drawings. *See In re Viterra Inc.*, 671 F.3d 1358, 101 USPQ2d 1905, 1909 n.2 (Fed. Cir. 2012). A typed or typeset mark is the legal equivalent of a standard character mark. TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 807.03(i) (2022).

[6] Reg. No. 1691557; issued June 9, 1992; canceled February 5, 2016.

Notice of Reliance Exhibit A, 28 TTABVUE 6-13). In 1997, Dana Design Ltd. registered the design depicted below for "all-purpose sport bags, backpacks, internal frame backpacks, and rucksacks." *Id.* at 14-18. [7]



In 2000, Dana Design Ltd. assigned both marks to K-2 Corporation.[8] In 2005, K-2 Corporation assigned the marks to Marmot Mountain LLC.[9] The word mark registration was canceled in 2016 and the design mark registration was canceled in 2018. However, the evidence made of record shows that DANA DESIGN-branded goods are currently being offered for sale on the secondary resale market. (Plaintiff's Notice of Reliance Exhibit B, 28 TTABVUE 50-52; Plaintiff's Rebuttal Notice of Reliance Exhibit B, 32 TTABVUE 12-22).

Meanwhile, at least since January 11, 1999, Opposer Mystery Ranch, Ltd., of which Gleason is a co-owner, has been in "active-good standing" status. (Applicant's Notice of Reliance, Exhibit E, Montana Secretary of State records at biz.sosmt.gov,

---

[7] Reg. No. 2122036; issued December 16, 1997; canceled July 20, 2018.

[8] 28 TTABVUE 8-9 and 16-17. A second registration issued for the mark DANA DESIGN for "tents sold exclusively in sporting goods, outdoor and mountaineering shops." 28 TTABVUE 19-25. Reg. No. 2534350 issued on January 29, 2002 and was assigned, as a pending application, to K-2 Corporation in 2000; assignment recorded at Reel/Frame No. 2182/0591. 28 TTABVUE 21-22. The mark was further assigned to Marmot Mountain LLC on May 26, 2005; recorded at Reel/Frame No. 3093/0991. *Id.* The registration was canceled in 2012 for failure to renew. 28 TTABVUE 19.

[9] Assignments recorded at Reel/Frame Nos. 2095/0029 and 3093/0991. 28 TTABVUE 8 and 16-17.

30 TTABVUE 68, and Opposer's Rebuttal Notice of Reliance, Montana Secretary of State Principal Report, 32 TTABVUE 10). Gleason testified that Mystery Ranch has been making and selling backpacks and load carriage systems since 2000, but his testimony is silent on whether sales were made under the DANA DESIGN mark. (29 TTABVUE 5).

### B. Terminal Moraine Inc.

Applicant Terminal Moraine Inc. was incorporated in September 2015, for the specific purpose of offering backpacks and tents "under the DANA DESIGN mark [a word mark]." (Fairbairn Decl. ¶ 1-2, 31 TTABVUE 2-3). In response to Opposer's Interrogatory No. 3, Applicant explains:

> Mr. Fairbairn sought the assistance of a friend, Ellia Kassoff, who Mr. Fairbairn was aware had prior experience in acquiring old brands that have been dormant for longstanding periods of nonuse. In 2016, Mr. Fairbairn contacted Mr. Kassoff to inquire about the trademark application process [for DANA DESIGN] and Mr. Kassoff instructed Mr. Fairbairn as to how to file an application to register a trademark on the website offered by the United States Patent and Trademark Office.

(28 TTABVUE 57; 32 TTABVUE 30).

Continuing, Applicant states: "On or around November of 2016, Todd Fairbairn acting as principal operator of Applicant decided to file U.S. App. No. 87252922 for the mark DANA DESIGN (standard characters) to distinguish its goods from others in the marketplace." *Id.* That application ultimately was abandoned.

Applicant filed the subject application for the mark **DANA DESIGN** in 2018, on the basis of Applicant's bona fide intent to use the mark in commerce. Applicant did not submit at trial any evidence of use of its mark.

## IV. Entitlement to a Statutory Cause of Action

Entitlement to a statutory cause of action "is an element of the plaintiff's case in every inter partes proceeding." *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *6-7 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021); *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020), (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 109 USPQ2d 2061, 2067 n.4 (2014)), *cert. denied*, 142 S. Ct. 82 (2021).

To establish entitlement to a statutory cause of action, a plaintiff must demonstrate: (i) an interest falling within the zone of interests protected by the statute, and (ii) a reasonable belief in damage proximately caused by the registration or continued registration of the mark. *Corcamore*, 2020 USPQ2d 11277, at *4; *see also Empresa Cubana Del Tabaco v. Gen. Cigar Co.*, 753 F.3d 1270, 111 USPQ2d 1058, 1062 (Fed. Cir. 2014); *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025 (Fed. Cir. 1999); *Lipton Indus., Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982).

Stated another way, a plaintiff is entitled to bring a statutory cause of action by demonstrating a real interest in the proceeding and a reasonable belief of damage. *Australian Therapeutic Supplies*, 2020 USPQ2d 10837, at *3; *Empresa Cubana,*

111 USPQ2d at 1062. There is "no meaningful, substantive difference between the analytical frameworks expressed in *Lexmark* and *Empresa Cubana.*" *Corcamore*, 2020 USPQ2d 11277, at *4. Under Trademark Act Section 13, 15 U.S.C. § 1063, "[a]ny person who believes that he would be damaged … by the registration of a mark upon the principal register" may file an opposition. Thus, "a party that demonstrates a real interest in [preventing registration of] a trademark under § 106[3] has demonstrated an interest falling within the zone of interests protected by § 106[3]. … Similarly, a party that demonstrates a reasonable belief of damage by the registration of a trademark demonstrates proximate causation within the context of § 106[3]." *Corcamore*, 2020 USPQ2d 11277, at *7.

In the context of a Section 2(a) claim, entitlement "does not rise or fall on the basis of a plaintiff's proprietary rights in a term; rather, a Section 2(a) plaintiff has standing by virtue of who the plaintiff is, that is, the plaintiff's personality or 'persona.'" *Estate of Biro v. Bic Corp.*, 18 USPQ2d 1382, 1385 (TTAB 1991), *cited in Bos. Ath. Ass'n v. Velocity, LLC*, 117 USPQ2d 1492, 1494 (TTAB 2015) (establishing standing based on use of unregistered mark); *see also Univ. of Notre Dame du Lac v. J.C. Gourmet Food Imps. Co.*, 703 F.2d 1372, 217 USPQ 505, 509 (Fed. Cir. 1983), *aff'g* 213 USPQ 594 (TTAB 1982) ("There may be no likelihood of such confusion as to the source of goods even under a theory of 'sponsorship' or 'endorsement,' and, nevertheless, one's right of privacy, or the related right of publicity, may be violated."). Thus, Opposer need not demonstrate a proprietary interest in Applicant's mark. Opposer need only demonstrate a real interest in the proceeding and a

reasonable belief that it will incur some direct injury to its own established trade identity ("persona") if Applicant's mark is registered.

There is no categorical legal bar precluding a corporate or institutional plaintiff from claiming, in a Board proceeding, a false suggestion of a connection with its trade name. Even a nickname or an informal reference "can qualify as an entity's 'identity,' thereby giving rise to a protectable interest." *Bos. Ath. Ass'n*, 117 USPQ2d at 1496; *Board of Trustees v. BAMA-Werke Curt Baumann*, 231 USPQ 408, 411 (TTAB 1986) (BAMA well-known as University's nickname such that "use by respondent of the identical term appropriates petitioner's identity"). We also have held that corporate or institutional plaintiffs may assert a real interest even where such interest in the outcome of a proceeding is based on the asserted rights of its members. *See, e.g.*, *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021, 2024 (Fed. Cir. 1987) ("These allegations [under Sections 2(a) and 2(d)] demonstrate a real interest in the outcome of the proceeding based on a likelihood of confusion with the DeBeers' trade name."); *In re Pedersen*, 109 USPQ2d 1185 (TTAB 2013) (application for LAKOTA falsely suggested a connection with a historic people who speak the Lakota language and share a common culture); *Am. Speech-Language-Hearing Ass'n v. Nat'l Hearing Aid Society*, 224 USPQ 798, 801 (TTAB 1984) (national association consisting of members who meet certain requirements in speech pathology or audiology had standing to assert false suggestion of a connection claim under Section 2(a) on behalf of its members).

Opposer has asserted its entitlement on the basis of its own persona having been misappropriated together with its co-owner's interest, on the theory that both entities' interests coincide. Opposer argues that it is "widely known that Mystery Ranch is owned and operated by Dana Gleason," (Plaintiff's Brief, 33 TTABVUE 8), and that it "has made a substantial investment in advertising and promoting Mr. Gleason as its Owner and backpack designer." *Id.* at 29. Gleason testified that he is "the company spokesman for [Opposer's] goods and services." (Gleason Decl. ¶ 19, 29 TTABVUE 6). The extract generated on August 27, 2020 from the Montana Secretary of State lists Dana Gleason as President of Mystery Ranch, Ltd. and as a co-Director, together with one other individual. (Opposer's Rebuttal Notice of Reliance, 32 TTABVUE 10). Although Opposer argues to the contrary, its interest is not coincident with Dana Gleason's but rather is in protecting Dana Gleason's persona in order to preserve Opposer's right, as a direct competitor of Applicant, to use the DANA name in promoting backpacks, tents, and related goods.

We find that Opposer has demonstrated its personal stake in preventing the registration of a mark in the backpack field that allegedly appropriates the persona of one of its owners promoted in connection with the business, and a reasonable belief in resultant damage. As the corporate body owned in part by Dana Gleason, Opposer has an interest beyond that of the general public in protecting Mr. Gleason's reputation as the purportedly famous "Dana" named in the designation DANA DESIGN. *See Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH*, 11 F.4th 1363, 2021 USPQ2d 913, at *10 (Fed. Cir. 2021) (plaintiff corporation was entitled to bring

Section 2(a) claim that the applicant's use of the family businesses name "Schiedmayer" injured the reputation of the brand; "this is not a case in which other Schiedmayer companies or individuals appear to have interests that conflict with the interests of Schiedmayer Celesta"); *U.S. Olympic Comm. v. Tempting Brands Netherlands B.V.*, 2021 USPQ2d 164 (TTAB 2021) (finding entitlement to a statutory 2(a) opposition based in part on Opposer's sale of competing goods under other marks, and Opposer's commemoration of the historical role of the named individual at its events); *Jewelers Vigilance*, 2 USPQ2d at 2024 (finding associational standing even in the absence of injury to the association; "There is no question that a trade association, having a real interest in the outcome of the proceedings, may maintain an opposition without proprietary rights in a mark or without asserting that it has a right or has an interest in using the alleged mark sought to be registered by an applicant. This is true irrespective of the grounds upon which the opposer relies in asserting the nonregistrability of applicant's mark." (internal citation omitted)); *In re Urbano*, 51 USPQ2d 1776, 1779 (TTAB 1999) (finding that "the entire organization which comprises the Olympic Games, as a whole, qualifies as an 'institution' within the meaning of Section 2(a) of the Trademark Act"); *Buffett v. Chi-Chi's, Inc.*, 226 USPQ 428, 429 (TTAB 1985) ("[A]n opposer in a proceeding of this character may prevail even if the name claimed to be appropriated has never been commercially exploited by the opposer in a trademark or trademark analogous manner.").

We therefore find that Opposer's interest falls within the zone of interests protected by the statute and that Opposer holds a reasonable belief that damage

would be proximately caused by the registration of Applicant's mark. And, while unnecessary to its Section 2(a) claim, Opposer has also shown its advertised status as a potential competitor to Applicant. For example, the online article entitled "Relaunch Of An Icon: Dana Designs To Mystery Ranch," states that "Mystery Ranch, based in Bozeman, Mont., has a full consumer pack line relaunch debut in the summer and for sale starting in 2016" (28 TTABVUE 54), and that "Mystery Ranch already has three outdoors/backpacking oriented packs available, the Glacier, Big Mountain and Terraplane (a name that should stir reminiscence for some readers). And they look very Dana Designs-esque." *Id.*[10] *See Books on Tape, Inc. v. Booktape Corp.*, 836 F.2d 519, 5 USPQ2d 1301, 1302 (Fed. Cir. 1987) (finding competitor has standing because it has an interest in the outcome beyond that of the general public); *Peterson v. Awshucks SC, LLC*, 2020 USPQ2d 11526, at *6 (TTAB 2020) (entitlement to a statutory cause of action found where petitioner and respondent are competitors).

Having demonstrated entitlement under Trademark Act Section 2(a), Opposer may rely on any available statutory grounds for opposition set forth in the Trademark Act. *Jeweler's Vigilance Comm.*, 2 USPQ2d at 2023 ("Once standing is established, the opposer is entitled to rely on any of the grounds set forth in Section 2 of the Lanham Act which negate applicant's right to its subject registration."); *A&H Sportswear Co. v. Yedor*, 2019 USPQ2d 111513, at *3 (TTAB 2019). Accordingly, Opposer's showing establishes its entitlement to a statutory cause of action under

---

[10] We do not consider this article as proof of Opposer's entry into the backpack market. However, on its face, it shows that the public has been exposed to assertions that Mystery Ranch is in business as a backpack supplier.

both Trademark Act Sections 2(a) and (c), 15 U.S.C. §§ 1052(a) and (c). *See also M/S R.M. Dhariwal Huf 100% EOU v. Zarda King Ltd.*, 2019 USPQ2d 149090, at *4 (TTAB 2019) ("Standing to assert a § 2(c) claim may be established by facts that Opposer is a competitor of Applicant that has a present or prospective right to use the name MANIKCHAND [Opposer's founder's middle name]").

## V.   False Suggestion of a Connection

Trademark Act Section 2(a), in relevant part, prohibits registration of "matter which may . . . falsely suggest a connection with persons, living or dead, institutions, beliefs or national symbols . . . ." 15 U.S.C. § 1052(a). The legislative history of Section 2(a) and prior precedent make clear that "[t]he statutory false suggestion of a connection refusal emerged from the right to privacy and right of publicity." *In re Nieves & Nieves LLC*, 113 USPQ2d 1639, 1643 (TTAB 2015) (PRINCESS KATE falsely suggests a connection with Catherine, Duchess of Cambridge, also known as "Kate Middleton"); *see also Bridgestone/Firestone Rsch., Inc. v. Auto. Club de l'Ouest de la Fr.*, 245 F.3d 1359, 58 USPQ2d 1460, 1464 (Fed. Cir. 2001) ("This protection of rights of personal privacy and publicity distinguishes the § 2(a) false suggestion of connection provision from the § 2(d) likelihood of confusion provision."), *cited in In re Elster,* 26 F.4th 1328, 2022 USPQ2d 195, at *8 (Fed. Cir. 2022); *Univ. of Notre Dame*, 217 USPQ at 509. If "Dana Design" is not Opposer's name or identity, or close to it, Opposer has no claim to any associated right of privacy and right of publicity, and has no meritorious Section 2(a) false suggestion claim.

A false suggestion of a connection has been established when four elements are proved:

1. Applicant's mark is the same or a close approximation of Opposer's name or identity;

2. The mark would be recognized as such, in that it points uniquely and unmistakably to Opposer;

3. Opposer is not connected with the goods sold by Applicant; and

4. Opposer is of sufficient fame or reputation that, when Applicant's mark is used in connection with its goods, a connection with Opposer would be presumed.

See *Pierce-Arrow Soc'y v. Spintek Filtration, Inc.*, 2019 USPQ2d 471774, at *4 (TTAB 2019) (citing cases); *In re White*, 73 USPQ2d 1713, 1718 (TTAB 2004); *see also Piano Factory Grp.*, 2021 USPQ2d 913, at *11 .

Opposer alleges in its complaint in general that:

4. Opposer is widely known throughout the backpack industry in the USA, and other countries, as being at least substantially owned and operated by Dana Gleason, an individual, who has worked in the backpack industry for over 30 years and has become famously associated therewith. (15 TTABVUE 3).

5. In 1985, Dana Gleason founded the company "Dana Design", a backpack company that would come to be recognized as the industry standard in load carriage technology. Due to its state of the art backpack technology and designs, the name "Dana Design" became a famous brand name recognized by the industry and consumers. *Id*.

6. As part of the fame and success of the "Dana Design" brand in the backpack industry, individuals in the industry and consumers associated the term "Dana Design" with Dana Gleason as an individual. *Id*.

Opposer specifically alleges in connection with its claim of false suggestion of a connection that:

> 10. Due to the fame and notoriety of "Dana Design" within the backpack community and industry, and Dana Gleason's long-standing association with the "Dana Design" name for over 30 years, the public and the backpack industry has come to associate packs and related products bearing the "Dana Design" or, for that matter, any use of the forename "Dana", with Dana Gleason and the Opposer. *Id* at 4.
>
> 11. By reason of Dana Gleason's long and extensive association with the "Dana Design" brand, Dana Gleason has achieved widespread and favorable public recognition in the backpack industry and has become an asset of great value as a symbol of Opposer's goods and goodwill. *Id* at 4.
>
> 12. "Dana Design" is unmistakably associated with Dana Gleason and, due to Dana Gleason's widely known ownership of Mystery Ranch, Ltd, "Dana Design" is also unmistakably associated with Opposer. *Id* at 4.
>
> …
>
> 22. Consumers have come to recognize "Dana Designs" as an "earlier incarnation" of the current Mystery Ranch brand. *See* Exhibit A. Accordingly, Mystery Ranch has an identity that is associated with Dana Design. *Id* at 6.
>
> …
>
> 30. Registration of Application Serial No. 88/070,495 will falsely suggest a connection with a living person and will be in violation of 15 U.S.C. § 1052(a). *Id* at 8.[11]

---

[11] Opposer's pleading of false suggestion of a connection is insufficient because Opposer does not assert that the public would recognize Applicant's mark as pointing uniquely to Opposer (or to Dana Gleason), or that Applicant's mark is a close approximation of Opposer's (or Dana Gleason's) identity or "persona." *See, e.g.*, *Ritz Hotel Ltd. v. Ritz Closet Seat Corp.*, 17 USPQ2d 1466, 1471 (TTAB 1990) (finding pleading that applicant's use of its mark points uniquely to person or institution named or identified is necessary element of Section 2(a) false suggestion claim). However, the matter has been addressed by express consent of the parties and we thus consider the complaint amended to include the necessary allegations. *See, e.g.*,

Opposer argues that Gleason's identity is "associated" with Opposer and that Applicant's use of the name DANA as part of its trademark creates a false suggestion of a connection with Dana Gleason and Opposer:

> Mystery Ranch has made a substantial investment in advertising and promoting Mr. Gleason as its Owner and backpack designer and he is the company spokesman for its goods and services. Accordingly, consumers in the backpack and outdoor gear industry will immediately associate the DANA DESIGN Mark at issue with Opposer Mystery Ranch. Due to the fame of the "Dana Design" brand, the public has come to associate outdoor gear bearing the mark "Dana Design," or any version of the term "Dana" for that matter, with Opposer Mystery Ranch due to Dana Gleason's ownership. (internal citations omitted).

(39 TTABVUE 17)[12]

While conceding that "[l]ong before Applicant applied to register the DANA DESIGN Mark at issue in this Proceeding, one of Opposer's principals, Dana Gleason, founded a backpack company named Dana Design, Ltd, which was established using Mr. Gleason's first name," (36 TTABVUE 9), Applicant argues that Opposer merely seeks to "regain the rights a prior business retained in and to the DANA DESIGN mark before that entity sold and thereby abandoned those rights." (36 TTABVUE 7).

---

Applicant's Brief, 36 TTABVUE 7 ("Opposer has failed to establish that Applicant's Mark points to Opposer"); 36 TTABVUE 14 ("[Applicant's mark] is not the same as or a close approximation of [Opposer's] name or persona"). *See Bd. of Regents, Univ. of Texas Sys. v. S. Illinois Miners, LLC*, 110 USPQ2d 1182, 1186 (TTAB 2014); *Conolty v. Conolty O'Connor NYC LLC*, 111 USPQ2d 1302, 1306 (TTAB 2014).

[12] Opposer also argues that by adopting its mark, Applicant intended to falsely suggest a connection with Opposer and Dana Gleason. In particular, Opposer relies on Applicant's Response to Opposer's Interrogatory No. 5 (Opposer's Rebuttal Notice of Reliance Exhibit C), 32 TTABVUE 31, wherein Applicant admitted that it was aware of Dana Gleason and Opposer Mystery Ranch at the time Applicant was formed, prior to filing the DANA DESIGN Mark application. We find that the admission does not dictate a finding that Applicant intended to suggest a connection to Opposer and not to Dana Gleason.

> There is no doubt that well before Applicant applied to register the DANA DESIGN Mark, one of Opposer's principals, Dana Gleason, co-founded a backpack company, named Dana Design, Ltd, which was established using Mr. Gleason's first name. (29 TTABVUE (Opposer's Declarations ¶ 2-3)). It is also undisputed that Dana Design, Ltd used the DANA DESIGN mark in relation to the sales of certain goods, including backpacks, for a period of time, and that Dana Design, Ltd garnered one registration and one pending application for the mark DANA DESIGN [that were subsequently canceled].
>
> . . .
>
> By virtue of the fact that no use of the DANA DESIGN mark was made thereafter, by Dana Design, Ltd, K-2, Marmot, Opposer, or any other person or entity, the DANA DESIGN name and mark fell into the abys [sic] of abandoned marks. (internal citation omitted).

*Id.* at 25.

Mystery Ranch is not a legal successor to Dana Design Ltd. or its successors in interest. Nonetheless, as previously noted, Trademark Act Sections 2(a) and (c) are not designed primarily to protect an entity's proprietary interest in a trademark, but rather are designed to "protect persons and institutions from exploitation of their persona." *Pierce-Arrow*, 2019 USPQ2d 471774, at *4; *see also Univ. of Notre Dame*, 217 USPQ at 508 ("[c]learly the same standard cannot be adopted for §2(a) as for §2(d)"). As the Board explained in *Pierce Arrow*, "overall Section 2(a) offers protection different in kind than Section 2(d)." 2019 USPQ2d 471774, at *7. Citing *In re White*, 73 USPQ2d 1713, 1718 (TTAB 2004), the Board in *Pierce Arrow* clarified:

> [W]hile, decades ago, "the Court of Customs and Patent Appeals considered a Section 2(a) false suggestion claim, at least when brought by commercial plaintiffs, to be akin to a Section 2(d) likelihood of confusion claim," that conception evolved into the current standard articulated

> in *Univ. of Notre Dame du Lac*. *In re White* went on to explain that "[a] Section 2(a) false suggestion case does not involve anything like the analysis … as would be involved if this were a Section 2(d) case involving a question of likelihood of confusion." *Id.* (citing *In re Wielinski*, 49 USPQ2d at 1757 ("Section 2(a) … is not about likelihood of confusion with trademarks. That problem is covered by Section 2(d) of the Act."))[13]

*Id.*

Unlike in *Pierce Arrow*, where the opposer unsuccessfully tried to assert the rights of a defunct corporation that had no surviving heir to its "persona," here, despite the transfer of goodwill in the trademark DANA DESIGN, Opposer has shown that public awareness of Dana Gleason and his connection to the backpacking field continued to the present. Accordingly, we find that Dana Gleason has not abandoned whatever rights he may have in his "persona."

### A. Whether DANA DESIGN Is Opposer's Name or Identity, or a Close Approximation Thereof

There is no dispute that Applicant's mark, which incorporates the given name DANA along with the silhouette of a backpacker, does more than "simply bring [Dana Gleason's] name to mind." *Pierce-Arrow*, 2019 USPQ2d 471774, at \*15 (citations omitted). Numerous examples provided by Opposer demonstrate that Dana Gleason is known within the field of backpacks and hiking gear, and that the name "Dana" in Applicant's mark would be recognized as a nickname for Dana Gleason. For example,

---

[13] The full citation to *In re Wielinski* is *In re Wielinski*, 49 USPQ2d 1754 (TTAB 1998), *overruled in part on other grounds*, *In re WNBA Enters. LLC*, 70 USPQ2d 1153 (TTAB 2003).

the results of Opposer's November 2, 2021 Google search for "Dana design backpack" show this:[14]

It is not enough, however, that the name DANA may qualify as Dana Gleason's "name or identity," or a close approximation thereof. The crux of the dispute under this prong focuses on whether DANA qualifies as **Opposer's** name or identity, and Dana Gleason is not the opposer here. "Opposer's Section 2(a) claim requires proof … that consumers view [DANA] so closely with Opposer that they recognize it as Opposer's name (or nickname), identity or persona." *U.S. Olympic Comm.*, 2021 USPQ2d 164, at \*18 (citing *Bos. Athletic Ass'n*, 117 USPQ2d at 1497).

---

[14] 32 TTABVUE 12, 15, 17, Rob Curtis, Eric Graves, and Rick Saez each testified that they "consider the terms 'Dana Design' or 'Dana' to be directly associated with Dana Gleason's persona." 29 TTABVUE 9, 12, and 15.

The summary results from Opposer's Google search suggest a relationship between Dana Gleason and Mystery Ranch. For example:



(32 TTABVUE 12).

The evidence also includes advertising for Dana Design backpacks on the secondary market, and that Opposer advertises itself as having been "built on the bedrock of Dana design and other renowned outdoor brands":

(32 TTABVUE 12).

Comments by consumers of Dana Design, Ltd.'s backpacks also support some public exposure to the association of Mystery Ranch and Dana Gleason:

- At WhitePlains.net, an individual posts: "I have extensive experience with both the Mystery Ranch brand and its earlier incarnation as Dana Designs (designed and owned by the same guy, Dana Gleason)." (28 TTABVUE 27).

- A YouTube video entitled "Meet the Maker: Dana Gleason of Mystery Ranch" describes Dana Gleason as the founder of both Dana Design Ltd. and Mystery Ranch, and presents several posts from individuals such as:

    - "I fell in love with Dana Design packs back in 1993. I own 3 Dana Design packs, pre-Mystery Ranch, the last Dana Design pack I purchased was in 1999 and all three are still going strong despite years of hard use to include 3 long distance thru hikes."

    - "Dana and the team at Mystery Ranch create the finest backpacks available, bar none. Their first rate quality, exceptional attention to detail, and solid integrity as a company should be an example to all. Great video! Thanks to Mystery Ranch for setting the bar high for superior manufacturing in the U.S."

(28 TTABVUE 31). This last post got two "likes."

In the context of a Section 2(a) false association claim, the Board also considers online articles as evidence of public perception, and has noted that "[w]hile not considered for the truth of any matters asserted therein, the on-line articles are competent to show that the public has been exposed to the term [at issue] and the meaning the public is likely to associate with the term." *Bos. Athletic Ass'n*, 117

USPQ2d at 1498 (citations omitted). Opposer has submitted copies of news articles that associate Mystery Ranch and Dana Gleason:

- At www.fieldmag.com, an interview with Dana Gleason entitled "Behind the Brand With Mystery Ranch Founder Dana Gleason," includes a photograph of Gleason "on the Mystery Ranch factory floor." (28 TTABVUE 34).

- At www.outsideonline.com, a 2016 article touts Mystery Ranch backpacks designed for women in an article entitled "The Company Building The World's Best Packs For Women, Mystery Ranch has a simple design philosophy: design stuff that fits and works for as many different people as possible," which begins by describing Dana Gleason's history as the founder of Dana Designs and owner and designer at Mystery Ranch:

> Looking at Dana Gleason, you wouldn't peg him for a builder of svelte women's backpacks. Tall, broad, and bearded, he's easily three times my mass, but like me, he occupies the underserved ends of the sizing spectrum. I'm little; he's XXL. So back in 1985, when he founded Dana Designs, Gleason developed novel ways to make packs fit a broad range of sizes. Now, as owner and designer at Mystery Ranch, a backpack brand headquartered in Bozeman, Montana, he continues to optimize his products for envelope-pushing outdoorswomen and -men.

Taking into account the totality of the evidence, although Opposer has shown that consumers associate Dana Gleason and Mystery Ranch, we find that they are not

perceived as each other's alter ego. There is no merger of the two such that the "Dana" in DANA DESIGN refers interchangeably to either entity. Opposer's efforts in publicizing Dana Gleason's involvement with Mystery Ranch "does not rise to the level of establishing [DANA] as the name or identity of [Mystery Ranch], or a close approximation of it." *U.S. Olympic Comm.*, 2021 USPQ2d 164, at \*22. We therefore find Applicant's mark not to be a close approximation of Opposer's name or identity. By itself, Opposer's failure to prove this first element of the case requires judgment in favor of Applicant.

### B. Whether DANA DESIGN Points Uniquely and Unmistakably to Opposer

While Opposer's failure to prove the first element of its cause of action is fatal, we nevertheless think it important to address another core element of this cause of action. "Fundamental to a [claim] of false suggestion of a connection under Trademark Act § 2(a) is the 'initial and critical requirement' that the identity being appropriated is unmistakably associated with the person or institution identified." *Nike, Inc. v. Palm Beach Crossfit*, 116 USPQ2d 1025, 1031 (TTAB 2015) (citing *Springs Indus., Inc. v. Bumblebee Di Stefano Ottina & C.S.A.S.*, 222 USPQ 512, 514 (TTAB 1984) (*quoting Univ. of Notre Dame*, 217 USPQ at 509)); *Buffett*, 226 USPQ at 429 (a protectible interest in a name or its equivalent is acquired under Section 2(a) where the name claimed to be appropriated points uniquely and unmistakably to that party's personality or "persona").

"[U]nder concepts of the protection of one's 'identity,' ... [a] critical requirement is that the name (or an equivalent thereof) claimed to be appropriated by another must

be unmistakably associated with" the institution in question. *Univ. of Notre Dame*, 217 USPQ at 509. "The protection afforded a name or its equivalent under Section 2(a) is acquired only when the name claimed to be appropriated points 'uniquely and unmistakably' to the plaintiff's 'persona,' that is the personal or trade identity of the claimant." *Bos. Athletic Ass'n*, 117 USPQ2d at 1497 (citing *Buffett*, 226 USPQ at 429); *see also Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1424 (TTAB 2008) ("[T]he name claimed to be appropriated by the defendant must point uniquely to the plaintiff."); *Institut Nat'l Des Appellations d'Origine v. Brown-Forman Corp.*, 47 USPQ2d 1875, 1887 (TTAB 1998) ("[I]t is unclear to the Board how it is possible for applicant's mark to point uniquely and unmistakably to both of the opposers."); *NASA v. Bully Hill Vineyards, Inc.*, 3 USPQ2d 1671, 1676 (TTAB 1987) (the term SPACE SHUTTLE did not point uniquely and unmistakably to NASA); *cf. Schiedmayer Celesta*, 2019 USPQ2d 341894, at \*19 (recognizing that there may be a false suggestion of a connection with multiple persons or institutions where those are "other Schiedmayer family-affiliated businesses") (citing *In re White*, 73 USPQ2d 1713, 1717-18 (TTAB 2004) (APACHE as used for cigarettes falsely suggests a connection with the nine federally recognized Apache tribes)), *aff'd*, 2021 USPQ2d 913; *In re Pedersen,* 109 USPQ2d at 1193 ("That the LAKOTA name identifies persons from more than one tribe does not negate the uniqueness of the name. [I]n this case, the Lakota tribes are related as they speak the Lakota language and share a common history").

Even assuming, arguendo, that DANA DESIGN were Opposer's name or identity, the evidence does not demonstrate that Applicant's mark points uniquely and

unmistakably to Opposer. In addition to itself, Opposer maintains that the name refers to Dana Gleason and to the defunct Dana Design Company. The record also reflects that the previously-registered DANA DESIGN marks were assigned to third-parties Marmot and K-2. These multiple potential persons and entities to which DANA DESIGN might point "is reason enough for us to find that Applicant's mark does not point uniquely and unmistakably to Opposer." *Pierce-Arrow*, 2019 USPQ2d 471774, at *18.

### C. Remaining Elements of Section 2(a) Claim

The parties do not dispute that Opposer is not connected with the goods intended to be sold by Applicant. However, given our finding that the DANA DESIGNS mark is not Opposer's name or identity, and does not point uniquely and unmistakably to Opposer, we need not reach the remaining elements of Opposer's Section 2(a) claim. *See U.S. Olympic Comm.*, 2021 USPQ2d 164, at *45; (addressing only the first two elements of Section 2(a) false suggestion to find no false suggestion of a connection); *In re Midwest Tennis & Track Co.*, 29 USPQ2d 1386, 1389 (TTAB 1993) (same).

## VI.   Conclusion as to Section 2(a)

Opposer has not demonstrated by a preponderance of the evidence that Applicant's mark falsely suggests a connection with Opposer. Specifically, Opposer has not satisfied at least the first two elements of the Section 2(a) false suggestion of a connection test and its Section 2(a) claim thus fails. Therefore, we dismiss Opposer's Section 2(a) claim.

### VII. Consent to Register Name Identifying a Particular Living Individual

Section 2(c) of the Trademark Act, 15 USC 1052(c), prohibits registration of a mark that "consists of or comprises a name, portrait, or signature identifying a particular living individual except by his written consent …." The provisions of Section 2(c) are applicable to attempts to register a person's full name, a nickname, a first name or a surname, so long as the name identifies a particular living person. *In re Elster*, 2022 USPQ2d 195, at *2-3, *rev'd on other grounds*, 26 F.4th 1328, 2022 USPQ2d 195 (Fed. Cir. 2022)[15]; *Krause v. Krause Publs., Inc.*, 76 USPQ2d 1904, 1909 (TTAB 2005) (citing *In re Sauer*, 27 USPQ2d 1073 (TTAB 1993), *aff'd*, 26 F.3d 140, 32 USPQ2d 1479 (Fed. Cir. 1994) (Section 2(c) applicable to "not only full names, but also surnames, shortened names, nicknames, etc., so long as the name in question does, in fact, 'identify' a particular living individual").

We must first determine whether Opposer may invoke Section 2(c) on behalf of Dana Gleason. In *Nike, Inc. v. Palm Beach Crossfit*, the Board set forth the standard that determines who may invoke Section 2(c)'s provision against registering a mark that identifies a particular living individual:

---

[15] Although in *Elster* the Federal Circuit sustained a First Amendment "as-applied challenge" to Section 2(c), it did not hold that Section 2(c) in facially unconstitutional, and the concerns that drove the court's decision are not present in this case. Unlike in *Elster*, this proposed mark is not "critical of a public official," because the mark contains no such message and Dana Gleason is not a public official or public figure of any kind. *See* 2022 USPQ2d 195, at *5-6. In addition, in this case, Dana Gleason has testified that he continues to make commercial use of his name in connection with Opposer's business and has alleged that the mark at issue exploits his commercial interests. 29 TTABVUE 6. Thus, as applied to this application, Section 2(c) presents no First Amendment problem.

> Comparing Section 2(a) with Section 2(c), Section 2(a) can be invoked by an entity, but Section 2(c) requires reference to "a particular living individual." *See Ross v. Analytical Tech., Inc.*, 51 USPQ2d 1269, 1276 n.13 (TTAB 1999) (review of legislative history and final statutory language shows that § 2(c) must be understood as referring to "particular living individual"); 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 13:38 (4th ed. 2015) (comparing §§ 2(c) and 2(a)). In contrast to our having had no previous occasion to decide who may be a proper plaintiff under Section 2(a)'s false association clause, we have, in the *Ceccato* decision [*Ceccato v. Manifattura Lane Gaetano Marzotto & Figli S.p.A.*, 32 USPQ2d 1192, 1195 (TTAB 1994)], previously held that an entity seeking to invoke Section 2(c) must assert that it has a "cognizable or proprietary right" in the name, image, likeness or signature, such as through a "linkage or relationship" with that particular individual sufficient to assert the third party's rights.

*Nike, Inc. v. Palm Beach Crossfit*, 116 USPQ2d at 1033.

The Board in *Nike* referred to its earlier decision in *Ceccato* for the principle that an entity must establish a privity relationship with the particular living individual in order to demonstrate a cognizable right through its "linkage or relationship" with that person. In *Ceccato*, the applicant, a corporation organized under the laws of Italy, asserted the rights of an individual known as Duca D'Aosta in a counterclaim against the opposer's registration for the mark DUCA D'AOSTA and design (which the opposer had asserted against applicant's attempt to register a stylized version of DUCA D'AOSTA). Before the Board took up the merits of the applicant's counterclaim, it noted that the applicant had "not asserted any relationship whatsoever with the individual which it contends is the Duca D'Aosta," and the alleged name was in reality a title and did not name a particular living individual. Thus, the applicant's attempt to assert third-party rights was unavailing.

Unlike in *Ceccato*, Opposer here relies upon its relationship with Dana Gleason as its founder and co-owner, who refers to Opposer in his declaration as "my company." (29 TTABVUE 6). Dana Gleason testified that Opposer "has made a substantial investment in advertising and promoting me as its Owner and backpack designer, and I am the company spokesman for its goods and services." *Id.* Opposer further relies upon the public's awareness of that relationship to show the requisite privity relationship and that Opposer has a cognizable right in the name DANA. Indeed, the Board in *M/S R. M. Dhariwal (HUF)* held that the opposer, a corporation organized under the laws of India, had privity with its founder, who was known by the name MANIKCHAND. 2019 USPQ2d 149090, at *4. Quoting *Ceccato,* the Board found that any party "in privity with an individual can bring a § 2(c) claim."

> Apart from [entitlement], "an element of the § 2(c) ground is that the party asserting that ground must have a cognizable or proprietary right in the name." *Ceccato v. Manifattura Lane Gaetano Marzotto & Figli S.p.A.*, 32 USPQ2d 1192, 1194 (TTAB 1994) ("applicant's failure in this case is not in connection with proving its standing to assert this ground, but in proving that it has any linkage or relationship with an individual known as the Duca D'Aosta upon which it could assert this third party's rights."). A party in privity with an individual can bring a § 2(c) claim. *Id.*

*Id.*

Applicant argues that Mystery Ranch cannot possess a cognizable or proprietary right in the name or mark DANA DESIGN because "Opposer's now-principal, Dana Gleason, made a decision more than two decades ago to sell his company's interest in the DANA DESIGN name and mark." (36 TTABVUE 26). According to Applicant, after the DANA DESIGN registrations were canceled, "[b]y virtue of the fact that no

use of the DANA DESIGN mark was made thereafter, by Dana Design, Ltd, K-2, Marmot, Opposer, or any other person or entity, the DANA DESIGN name and mark fell into the abys [sic] of abandoned marks." *Id*.

It is one thing to permit another to use one's name as a mark, quite another to "relinquish all ownership rights in one's name and agree to allow another to register one's name." *In re D.B. Kaplan Delicatessen*, 225 USPQ 342, 344 (TTAB 1985) (finding consent to registration because the defendant, Donald Kaplan, "ha[d] indicated in writing that the trade name and service mark 'D.B. Kaplan Delicatessen' and any name or mark confusingly similar thereto is the property of D.B. Delicatessen, Inc., the applicant therein, and that Donald Kaplan cannot use it in any subsequent business"). In *Kaplan,* applicant corporation was named after one of the original shareholders, Donald Kaplan. Kaplan sold his entire interest to his partner, and in their "buyout" agreement gave up his right to use the tradename and service mark DB Kaplan delicatessen. The provisions of the agreement were deemed sufficient to show that Donald Kaplan consented to the use and registration of his name by the applicant. Accordingly, applicant corporation was permitted to register the mark.

In contrast, Dana Gleason assigned his rights to three trademark registrations, two for the word mark DANA DESIGN and one for the figure of a hiking man. Copies of the assignments were not made of record. Copies of any related agreements between Dana Gleason, K-2, or Marmot are not in the record. Although the three original DANA DESIGN registrations had all expired by 2018, the actions of Dana

Gleason in setting up Mystery Ranch in 1999; honoring Dana Design Ltd.'s warranties on DANA DESIGN backpacks; and continuing to interface with the public as the designer of the backpacks bearing the DANA DESIGN marks as well as Opposer's promotion of Dana Gleason as its owner and backpack designer, show Dana Gleason's intent was to keep using his name. Thus, he, and Opposer as his privy, have a protectable interest against registration of the trademark. Opposer has thus demonstrated that it has a "cognizable right" through a sufficient "linkage or relationship" with Dana Gleason, thus enabling it to assert Dana Gleason's rights under Section 2(c).

Turning next to whether DANA DESIGNS identifies Dana Gleason, the Board has set forth two ways to show that a "name" identifies a particular living individual for purposes of Section 2(c): 1) if the person is so well known that the public would reasonably assume the connection, or 2) if the person is publicly connected with the business in which the mark is being used. *M/S R.M. Dhariwal*, 2019 USPQ2d 149090, at *5; *Nike, Inc. v. Palm Beach Crossfit*, 116 USPQ2d at 1032-33 ("To sufficiently allege a Section 2(c) claim, a plaintiff must allege that the mark 'consists of or comprises' the name, image, likeness or signature of a particular living individual, and that he or she is so well known that the public would reasonably assume a connection between the mark and the individual, or that, because the individual is publicly connected with the business or field of the identified goods or services, such connection would be assumed.") (citing *Martin v. Carter Hawley Hale Stores, Inc.*, 206 USPQ 931, 933 (TTAB 1979)); *see also Krause v. Krause Publs.*, 76

USPQ2d at 1909-10 (quoting *Martin*, 206 UPSQ at 933); *Ross v. Analytical Tech*, 51 USPQ2d at 1275 (finding a substantial number of purchasers or users of ROSS electrodes would recognize the mark identifies opposer Dr. Ross as the inventor of these electrodes).

Although Applicant's mark **DANA DESIGN** includes only Dana Gleason's first name, it falls within the provisions of Section 2(c) if Opposer establishes that DANA, as used on or in connection with the goods set forth in the involved application, identifies Dana Gleason, "a particular living individual." In the present case, the record establishes that Dana Gleason is known by the relevant consuming public to be associated with backpacks and hiking gear, and he remains publicly connected with the relevant marketplace by his ongoing affiliation with Opposer's business. Thus, use of the name DANA in connection with equipment in the field would lead to the assumption that Dana Gleason was in some way associated with the goods being

offered under the name. The name DANA as used in Applicant's mark **DANA DESIGN** identifies Dana Gleason, Opposer's co-owner, President, and co-Director.

Applicant's evidence that "Dana" is a unisex given name, (30 TTABVUE 338), that "is not in the top 1000 names for any year of birth beginning with 2000," *id.* at 336, does not detract from our finding that Dana Gleason is sufficiently connected with the identified goods that consumers would recognize Applicant's mark as identifying Gleason. Additionally, it is significant that Applicant produced no witnesses or other evidence to show that the name "Dana" refers to someone other than Dana Gleason.

*See Reed v. Bakers Eng'g & Equip. Co.,* 100 USPQ 196, 199-200 (Exam'r in Chief 1954) (pointing to the defendant's failure to produce witnesses "to show that the name Reed appearing in Reed Reel Ovens' does not refer to and identify petitioner in the particular trade" as significant).[16]

## VIII. Conclusion as to Section 2(c)

The record shows that Dana Gleason was in privity with Dana Design Ltd. and is currently in privity with Opposer, who because of this relationship has a cognizable right to assert Gleason's rights under Section 2(c) to prevent the use of his first name DANA without his written consent. Applicant started its business under a mark that prominently includes the name DANA. Gleason is publicly connected with the business in which Applicant's mark is intended for use; consumers would make an association between Gleason and Applicant's mark. Because Gleason's consent to Applicant's registration of its mark has not been provided, registration of Applicant's mark is prohibited under Section 2(c). Therefore, we sustain the opposition under Section 2(c) of the Trademark Act.

**Decision**: Opposer's claim under Trademark Act Section 2(a) is dismissed.

The opposition is sustained under Trademark Act Section 2(c) and registration of

Applicant's mark is refused.

---

[16] In 1954, cases involving oppositions to trademark applications were adjudicated by the Patent Office Examiner in Chief, "the predecessor to the Trademark Trial and Appeal Board." *Flowers Indus. v. Interstate Brands Corp.*, 5 USPQ2d 1580, 1583 (TTAB 1987).