Don W. Martens, of Knobbe, Martens, Olson & Bear, Newport Beach, Cal., for appellant.

Glenn B. Morse, Grand Rapids, Mich., for appellee.

Before MARKEY, Chief Judge, and NIES and BISSELL, Circuit Judges.

**BOOKS ON TAPE, INC., Appellant,**

v.

**The BOOKTAPE CORPORATION, Appellee.**

**Appeal No. 86–1414.**

United States Court of Appeals, Federal Circuit.

Decided by Unpublished Opinion June 12, 1987.

Opinion Issued Dec. 30, 1987.

NIES, Circuit Judge.

Appellant, Books on Tape, Inc., appeals a decision of the Trademark Trial and Appeal Board of the United States Patent and Trademark Office dismissing its petition to cancel a registration of The Booktape Corporation on the Supplemental Register for the trademark BOOKTAPES for prerecorded audio tapes for instructional purposes, Registration No. 1,245,671, issued February 12, 1981. We reverse. The case is remanded for proceedings consistent herewith.

I

The decision of the board is reported under the above heading at 229 USPQ 632 (TTAB 1986), with which familiarity will be assumed. The question under review is whether the board properly dismissed the

cancellation on the ground that petitioner lacked standing to maintain the proceeding.

## II

■ The board held that petitioner had not and could not establish rights in BOOKS ON TAPE as a trademark, service mark, or trade name because the name is the generic designation for cassettes on which books are recorded. Considering the record as a whole, that finding is clearly erroneous. There is no evidence that petitioner itself or others in the industry use "books on tape" generically. While there have been some vernacular uses of "books on tape" in newspaper articles, the great majority of those materials concern only petitioner and the fact that petitioner originated a new industry. Largely it appears to be that the media has misused or made a play on petitioner's name. Even the usage in the two cartoons is ambiguous. BOOKS ON TAPE is displayed in quotation marks in one, and in the other could simply be a reference to petitioner. It may also be that the artist took literary license with a proprietary name. Either way it does not prove genericness to the relevant public. *Cf. In re Omaha Nat'l Corp.*, 819 F.2d 1117, 2 USPQ2d 1859 (Fed.Cir.1987). The term, while aptly descriptive at the time of its adoption by petitioner appears no more descriptive than the challenged mark BOOKTAPE, a term the PTO accepted for registration on the Supplemental Register.

■ Secondly, the board's holding that under *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40 (CCPA 1981), "petitioner has no standing to bring a cancellation proceeding under section 2(d)" because it has not established proprietary rights in BOOKS ON TAPE is wrong as a matter of law. *See Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021 (Fed.Cir.1987). Petitioner, a competitor of respondent, clearly has an interest in the outcome be-

yond that of the public in general and has standing.* Thus, as in *Jewelers*, the board has confused petitioner's standing with the merits of the case.

Finally, the ruling on the merits in *Otto Roth*, in any event, is not controlling here. The *Otto Roth* opposer sought to prevent the applicant's registration of an arbitrary mark on the *Principal* Register on the basis of prior use of a *descriptive* phrase. One who had proprietary rights in a mark was being attacked by a party who had established no rights in a mark on the ground that the applicant's use would be attributable to opposer. In contrast, this case concerns a registration for a *descriptive* term on the *Supplemental* Register. The registrant here has as yet no proprietary rights in a mark and further admits petitioner's concurrent use, indeed, petitioner's *prior* adoption and use of virtually an identical descriptive term.

The statute does not require the anomalous result that a junior user is entitled to keep its Supplemental Registration for a descriptive term in which it has not established secondary meaning (as evidenced by registration on the Supplemental Register) because a *prior* user cannot show secondary meaning in that term either. *See Kwik–Kopy Franchise Corp. v. Dimensional Lithographers, Inc.*, 165 USPQ 397, 398–99 (TTAB 1970) ("lawful use" in section 23 (15 U.S.C. § 1091) means "exclusive use"). In any event, once the issue of genericness is out of the case, the evidence of record here amply supports petitioner's claim that it has established a trade identity in "Books on Tape" as its company name.

## III

For the foregoing reasons, we conclude that petitioner has standing to maintain the

---

* The board did not have the benefit of the Supreme Court decision in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, —— U.S. ——, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987), which holds, "[A] suit will not be dismissed for lack of standing if there are sufficient 'allega-tions of fact'—not proof—in the complaint or supporting affidavits." at ——, 108 S.Ct. at 385 (footnote omitted). Here, petitioner alleged that respondent's registration had been cited as a bar to petitioner's registration of its mark.

cancellation proceeding and the decision by the board is, accordingly, reversed.

REVERSED and REMANDED.